IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WILLIAM CALO-RIVERA
WILLIAM CALO & ASSOCIATES
Plaintiffs

vs

BANCO POPULAR DE PUERTO RICO
POPULAR LEASING & RENTAL, INC.
POPULAR AUTO
ANGEL G. VAZQUEZ, in his official and personal capacity and the conjugal partnership between him and his wife JANE DOE
AUTO SPEED COLLECTION
Orlando Vélez in his official and personal capacity and the conjugal partnership between him and his wife JANE SMITH
COMMONWEALTH OF PUERTO RICO
PUERTO RICO POLICE DEPARTMENT
AGENT JORGE BORDALI-CASANOVA in his official and personal capacity and the conjugal partnership between him and his wife JANE BLACK
JOHN DOE, INSURANCE X, Y, Z
Defendants

CIVIL 05-1832CCC

## OPINION AND ORDER

The action before us was filed pursuant to the Fair Debt Collection Practices Act, 15 U.S.C.§1692, et seq., (FDCPA) the Uniform Commercial Code, U.C.C.-9-503, et seq.(U.C.C. or the Code) and 42 U.S.C. §1983 and Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. §5141. Plaintiffs William Calo-Rivera and William Calo & Associates ("Associates" or " the business"), a business incorporated under the laws of Puerto Rico also seek a declaratory judgment to enjoin defendants from further violations of their constitutional rights.

The factual allegations of the case arise from events related to efforts of defendants Banco Popular de Puerto Rico, Popular Auto, Popular Leasing and Popular Auto employee, Angel G. Vasquez,[1] (collectively hereinafter "Popular") to collect overdue payments that

---

[1] MAPFRE PRAICO Insurance Co. and Universal Insurance Company, insurers for two of the Popular entities, who were initially sued as Insurance X Y Z have been identified in an amended

CIVIL 05-1832CCC                                                2

Associates owed for its leased vehicles, or to repossess them. The relevant facts are set forth below.

On or about June 3, 1999, Associates, with Calo-Rivera as the guarantor, entered into individual contracts with Popular for the leasing and financing of each of 17 vehicles used for Associates' business of general construction.[2] Plaintiffs allege that in or about June, 2004, they suffered economic difficulties that caused the business to make irregular payments on the leases, thus falling behind in its monthly instalments. Plaintiffs contend that Popular routinely accepted late payments.

Plaintiffs state that in or about November, 2004, codefendant Auto Speed Collection (Auto Speed) through its employee, Orlando Vélez, acting on behalf of Popular, began collection activities against them. Vélez allegedly began a campaign of harassment, "threatening to commence criminal prosecution against Plaintiff Calo-Rivera"[3] and "to put a 'lien' of theft on all the vehicles."[4] Plaintiffs aver that Popular did not give them prior notice that they were in default, that the loans had been accelerated and that they had to make full payment, or that Popular planned to repossess the business's leased vehicles.

The parties could not reach an agreement for refinancing the accumulated payments and late charges. Plaintiffs claim that they continued making payments and kept Popular apprised of their financial situation. They state that in or about February, 2005, they learned that Popular had not processed their December, 2004 payment, and would now only accept certified checks.

---

complaint filed December 15, 2005, (docket entry 33).

[2] Amended Complaint, ¶¶14-15

[3] Id., ¶17

[4] Id., ¶21

CIVIL 05-1832CCC                                      3

Plaintiffs aver that on June 24, 2005, pursuant to Law 8 of August 5, 1987,[5] defendant Jorge Bordali of the Puerto Rico Police Department (PRPD) began investigating the alleged theft and disappearance of the Associates' leased vehicles.  They contend that Popular and/or Auto Speed had made a theft report to the police, notwithstanding that Associates was making payments, that Calo-Rivera had discussed the situation with defendant Angel Vázquez, a Supervisor of Popular Auto, and that some of the leases had been paid in full.

Plaintiffs further allege that Auto Speed's agent, defendant Orlando Vélez, began a campaign of harassment to collect the debts, which included threats and harassment of an employee of Associates and of members of Calo-Rivera's family; in one instance he avers that his daughter was threatened with arrest if a leased vehicle at their home was not turned over or if the debt for it was not paid.  Plaintiffs contend that all of these actions were taken in violation of the FDCPA.  Plaintiffs further aver that Auto Speed was assisted by Puerto Rico unnamed police agents in its collection activities and the repossession of two vehicles, one of which was a piece of heavy equipment from one of Associate's work sites.  Calo-Rivera states that Agent Bordali gave him a citation and threatened to arrest him for the alleged theft or disappearance of the vehicles.

Plaintiffs claim that the police agents' actions violated their property rights, rights to due process and equal protection under the United States Constitution;  that the defendants are liable to him under to FDCPA and for breach of peace under UCC9-503; and that they liable under Article 1802, 31 L.P.R.A. §5141, for the emotional damages to Calo-Rivera and losses to the business resulting from the repossession of the vehicles.

A Motion to Dismiss the Amended Complaint filed by the Commonwealth of Puerto Rico, the PRPD, and Agent Bordali on December 29, 2005 (**docket entry 34**), which was joined by Auto Speed Collection and Orlando Vélez (**docket entry 36**), the Popular

---

[5]The Act for the Protection of Vehicular Property, 9 L.P.R.A. §3201, et seq., in its Section 3216 authorizes, among other police powers under the Act, the power to carry out any investigation or action related to its provisions.

CIVIL 05-1832CCC                    4

defendants **(docket entry 39)** and the insurers **(docket entry 41)** is now before us. Plaintiffs opposed the motion (**docket entry 37).** Auto Speed and Vélez tendered a reply (**docket entry 29**). In assessing a motion to dismiss, "[w] begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences of the [nonmoving party]." Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971(1st Cir. 1993); see also Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir.1992); Pérez Sánchez v. Public Building Authority, ___ F. Supp. 2d ___, 2005 WL 3244547 (D. Puerto Rico).

The governmental defendants, that is, the Commonwealth of Puerto Rico, the PRPD and Agent Bordali acting in his official capacity, invoke their Eleventh Amendment sovereign immunity from prosecution in federal court for the alleged violations of the FDCPA and Section 1983.

Plaintiffs opposed the motion with argument such as the following excerpt from page 5:

> The Commonwealth of Puerto Rico, Puerto Rico Police Department and Jorge Bordali-Casanova have wholly failed to establish ground in which it would be entitled to receive Eleventh Amendment Immunity under the allegations in the complaint. The Commonwealth of Puerto Rico, Puerto Rico Police Department and Jorge-Bordali-Casanova have the burden of demonstrating that [they are] entitled to Eleventh Amendment protection and the motion filed to that effect completely fails to address this point. For such failure the plaintiffs request that the Court considers that the codefendants have consented to suit in federal court.

Eleventh Amendment immunity can be raised at any time because of its jurisdictional implications. See, Pennhurst State School & Hospital v. Alderman, 465 S.Ct. 89,99(1984). Because Puerto Rico has not waived its sovereign immunity and Congress did not unequivocally express its intent to abrogate a state's immunity for purposes of the FDCPA, invocation of their immunity is proper. Sorrell v. Illinois Student Assistance Commission, 314 F. Supp. 2d 813, 816 (C.D. Illinois 2004). The PRPD is an arm of the Commonwealth of Puerto Rico and enjoys the shelter of the Eleventh Amendment in all respects. Acevedo López v. Police Department of the Comm. of Puerto Rico, 247 F.3d. 26, 228 (1st Cir. 2005). Agent Bordali, acting as a police officer in his official capacity, shares the PRPD's immunity under

CIVIL 05-1832CCC                                          5

Eleventh Amendment for violations of § 1983. See, Alvarez Rosario v. Cartagena 2005 WL 194972, *3 (D. Puerto Rico) and the cases cited therein.

For the above stated reasons, the claims for monetary damages[6] for violation of the FDCPA and §1983 by Commonwealth of Puerto Rico, the PRPD and Agent Bordali in his official capacity must be dismissed.

Agent Bordali, who has also been sued in his personal capacity, invokes qualified immunity from suit for the §1983 claims. Under the doctrine of qualified immunity, public officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 US 800, 818 (1982). In analyzing whether qualified immunity is appropriate, we must first determine the threshold issue: whether Agent Bordali's conduct violated plaintiffs' constitutional right to due process. Saucier v. Katz, 533 U.S. 194, 201(2001).

According to plaintiffs' allegations[7] the PRPD was acting pursuant to Law 8, 9 L.P.R.A. §3201, et seq., when it assisted Auto Speed in the repossession of the vehicles. Law 8 specifically gives Puerto Rico police the power to "carry out any investigation or action related the provisions, ends and purposes of [the Act for the Protection of Vehicular Property]." 9 L.P.R.A. §3216(5). Title 9 L.P.R.A. §3215, provides, in pertinent part, as follows:

> Any person who appropriates a motor vehicle belonging to another person illegally, without violence or intimidation, shall be sanctioned with imprisonment....
>
> It shall be understood that the appropriation is illegal in any of the following circumstances when the person:
> ....
>
> (5) has obtained legal possession of the vehicle through purchase subject to financing, ceased to comply with the financing contract terms and payments, conceals and hides a vehicle thus thwarting the financing company of its right to

---

[6] The issue of injunctive relief against the governmental defendants will be discussed below.

[7] Amended Complaint, at ¶25

CIVIL 05-1832CCC                                    6

>    repossess the same after the corresponding writ of embargo has been issued by the court.

The specific averments in the complaint against Agent Bordali are as follows:

>    23. On June 24, 2005, <u>defendant Agent Jorge Bordali Casanova of the Police Department of Puerto Rico began an investigation regarding the alleged theft and disappearance of the vehicles</u> by which [Popular] had placed a lien on some of the vehicles.
>    ....
>    29. On July 7, 2005 a heavy equipment machine ... under lease with BPPR <u>was repossessed by police officers</u> [at] one of Plaintiff's work site. At that time <u>codefendant Agent Bordali, officer in charge of the investigation, gave Plaintiff Calo-Rivera a citation and threatened him under the provisions of State Law No. 8 for the alleged theft and/or disappearance of the vehicles belonging to BPPR</u>. An official citation directed to guarantor Calo-Rivera was given to one of Plaintiff's employees.

(Our emphasis.)
As noted above, unnamed police officers of the Stolen Vehicles Division, who have not been sued in this action, are alleged to have attempted to repossess a vehicle at Calo-Rivera's home and repossessed a vehicle driven by Associates' employee Carlos Pérez and a piece of heavy equipment machine at one of Associates' work sites. Agent Boreli is alleged only to have investigated the purported illegal appropriation, and to have given Calo-Rivera as the guarantor, a citation and to have threatened to arrest him for said illegal appropriation. Inasmuch as it is not alleged that Agent Boreli repossessed either vehicle, or attempted to do so, we conclude that he did not deprive plaintiffs of any property or infringe on his right to due process rights to due process under the Fourteenth Amendment.

Accordingly, Agent Bordali is entitled to qualified immunity.

Defendants Auto Speed and Vélez argue that the FDCPA is applicable only to debts arising from transactions that are primarily for personal, family, or household purposes.[8] See,

---

[8]Section 1692a(5) defines the term "debt"as:

[A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

CIVIL 05-1832CCC                                                  7

15 U.S.C. §1692a(5).

Section 3213 of the same title empowers public order officials to detain and retain to investigate for a necessary and reasonable period of time a vehicle reported as illegally appropriated.

To rebut defendants' contention that the debt is not subject to the FDCPA because the subject of the leases were vehicles and equipment for use by the business; that is, they were not consumer debts, plaintiffs rely on Sluys v. Hand, 831 F. Supp. 321, 323 (S.D.N.Y. 1993). Beside an issue of personal jurisdiction, the court in Sluys focused on the question of whether an attorney who was a solo practitioner was a "debt collector,"as defined by the FDCPA, and therefore liable for damages under 15 U.S.C. §1962c(b),[9] resulting from the mailing of dunning notices to the debtor's employer. Before addressing that question, the court concluded that the term "consumer" as defined by the FDCPA "covers business debts if incurred by a sole proprietor," and consequently, plaintiff was protected by the law. Based upon this interpretation, Calo-Rivera claims that the FDCPA applies because he, too, is a sole proprietor and is personally liable for all his business debts and obligations.

The statute defines the term "consumer" as any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a(3). In our case, the leases were between Popular and Associates, a private corporate entity with its own juridical personality; not a natural person. Calo-Rivera, who may or may not be the sole shareholder of the corporation, by his own admission signed the lease as a guarantor. He further categorically stated, as we noted above,

---

[9]Section 1962c(b) provides in pertinent part:

Except [in seeking location information] as provided in section 1692(b) of this title, without prior consent of a consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, [the consumer's] attorney, consumer reporting agency . . . the creditor, the attorney of the creditor, or attorney of the debt collector.

CIVIL 05-1832CCC                                        8

that the vehicles that were the object of the leasing and financing were used for "Associates' business of general construction."

We also note that in the 15 years since Sluys was decided, it has not been favorably cited on this point, which in the few cases where it is discussed, has been rejected, see e.g. Slenk v. Transworld Systems, Inc., 236 F.3d. 1072, 1075 (9th Cir. 2001) ("The opinion in Sluys has been sharply criticized–and rightly so–by courts and academic commentators due to its abandonment of the [ FDCPA's ] definition of a consumer debt."); Beaton v. Reynolds, Ridings, Vogt and Morgan, P.L.L.C., 986 F. Supp. 1360, 1361 (W.D. Okla. 1998) ("An individual is a 'consumer' under the Act only if he or she has and alleged 'debt,' and the Act's definition of 'debt' encompasses only transactions that are entered into primarily for personal, family, or household purposes.  To the extent Sluys stands for the proposition that the Act does not require proof of such a purpose, the decision is in error.  [FN1]:  The portion of Sluys quoted by plaintiff is dicta, and the decision concerned a motion to dismiss under Rule 12(b)."

We conclude  that the unpaid installments for the debt s incurred  by the corporate entity, Associates, were commercial in nature and were not consumer debts as defined by the law. The plaintiffs claim under the FDCPA therefore falls.

Plaintiffs also allege that they have a federal claim for breach of the peace under the U.C.C. §9-503, which later became §9-609, et seq.  The Code is not federal law.  It is a "comprehensive modernizations of various statutes relating to commercial transactions . . ." prepared under the joint sponsorship of the American Law Institute and the National Conference of Commissioner on Uniform State Laws...." U.C.C. Preface (2005).  The Code is available for enactment as law by state governments in its entirety, or modified as the states see fit.  See, generally, U.C.C. Report Nos. 1-3 ( 1962,1964 and 1966, respectively).  Report No. 3 notes that, as of 1966, Puerto Rico had not enacted the Code, but had such an enactment under consideration. The Supreme Court of Puerto Rico has ruled that the provisions of the United States Code do not apply to Puerto Rico.  Electric Power Authority of Puerto Rico v. Las Americas Trust Co., 123 D.P.R. 834, 851(1989).

CIVIL 05-1832CCC                                9

There being no remaining federal claims we decline to exercise jurisdiction over the pendant claims.

Accordingly, the Motion to Dismiss the Amended Complaint (**docket entry 34**) is GRANTED with prejudice as to the claims based on the Fair Debt Collection Practices Act, the Uniform Commercial Code, and 42 U.S.C. §1983.  The motion is GRANTED without prejudice as to the pendant claims.

SO ORDERED.

At San Juan, Puerto Rico, on May 31, 2006.

                                            S/CARMEN CONSUELO CEREZO
                                            United States District Judge